IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-77-BO-RN

| | | |
|---|---|---|
| JERRY HERRING,<br><br>Plaintiff,<br><br>v.<br><br>FAMILY DOLLAR STORES OF NORTH CAROLINA, LLC, FAMILY DOLLAR/DOLLAR TREE, INC., and JACKIE YOUSIF,<br><br>Defendants. | ) | ORDER |

This cause comes before the Court on defendants' motions to dismiss for failure to state a claim. [DE 29]; [DE 32]. Plaintiff has responded [DE 44], and defendants have replied [DE 45]. A hearing was held before the undersigned on February 26, 2026. In this posture, the motions are ripe for disposition. For the following reasons, defendant Yousif's motion to dismiss is granted, and defendant Family Dollar Stores of North Carolina, LLC's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff's amended complaint [DE 21] alleges the following. Plaintiff was employed by defendant Family Dollar. *Id.* at ¶ 12. He worked there over a decade, serving as a store manager and later as an assistant store manager. *Id.* In late 2023, defendant Jacki Yousif became the district manager overseeing the store where plaintiff worked. *Id.* at ¶ 13. Yousif terminated "at least two other Black managers without clear cause" and fostered "a work environment that led several experienced Black employees to resign." *Id.*

"On February 8, 2024, Plaintiff became severely ill and had to cease working." *Id.* at ¶ 14. He "notified defendants of his need for leave." *Id.* at ¶ 15. Yousif applied on plaintiff's behalf for Family and Medical Leave Act (FMLA) leave, but leave was denied because plaintiff had not worked the required hours. *Id.*

"Plaintiff applied for and was approved for Short-Term Disability (STD) benefits through Defendants' provider, Unum, effective February 9, 2024. His STD benefits were approved for the maximum 12-week duration, through May 13, 2024." *Id.* at ¶ 16. "As his condition required continued absence, Plaintiff was approved for Long-Term Disability (LTD) benefits, retroactive to May 9, 2024. Medical documentation indicated his treatment would continue until at least February 2025, at which point his ability to work would be re-evaluated." *Id.* at ¶ 17. Yousif terminated plaintiff's employment on June 4, 2024, "while plaintiff was on approved LTD leave[.]" *Id.* at ¶ 18. Yousif informed him that he was "discharged due to not receiving a check during a certain period of time" because his "benefit hours r[an] out." *Id.* at ¶ 19 (alteration in original).

While a court's evaluation of a complaint on the defendant's motion to dismiss is "generally limited to a review of the allegations of the complaint itself[,]" courts may consider a document "that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Plaintiff refers to a charge of discrimination he filed with the Equal Employment Opportunity Commission (EEOC) in his amended complaint [DE 21, ¶ 8], and attached a copy of the charge to his original complaint [DE 1-2]. As the filing of such a charge is a prerequisite to some of plaintiff's claims, it is integral to

the complaint. No party appears to dispute the authenticity of the charge. The Court may consider the charge without converting the instant motions to ones for summary judgment.

In his EEOC charge, plaintiff alleged he is "disabled/QID" for purposes of the ADA. [DE 1-2, p. 1]. He "engaged in protected activities when [he] requested reasonable accommodations for [his] disability, in the form of excused leave to undergo required medical treatments and recovery, which the Employer approved." *Id.* He further alleged, with respect to his termination,

> When I emailed the benefits department, they notified me, via text, that my employment and benefits were terminated because I did not pay my portion of the premiums for my benefits and insurance coverage to continue. My 3 weeks of vacation time was used by the Employer to cover the costs of my portion of the insurance premiums from February 2024 until May 2024. However, when my vacation funds ran out, the Employer did not call or email me to notify me that my portion of the premiums were not paid before discharging me. On June 10, 2024, I was approved for long-term disability, and I am still undergoing medical treatments by 5 specialists for my illness.

*Id.* at p. 2. The charge is dated November 21, 2024. *Id.*

Plaintiff asserts claims against Family Dollar for (1) disability discrimination in violation of the Americans with Disabilities Act (ADA), (2) retaliation in violation of the ADA, (3) race discrimination in violation of Title VII, (4) wrongful discharge in violation of North Carolina public policy, (5) intentional infliction of emotional distress (IIED), and (6) breach of implied contract. He also asserts his IIED claim against defendant Yousif.

## DISCUSSION

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**I. Exhaustion of Administrative Remedies as to the Title VII and ADA Claims**

Title VII and the ADA require a plaintiff to "exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court[.]" *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012).

> A plaintiff is required to have filed an EEOC charge against the defendant "to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints." *Alvarado v. Bd. of Tr.*, 848 F.2d 457, 460 (4th Cir. 1988). However, this rule "does not require procedural exactness from lay complainants: 'EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *Id.* (quoting *Kaplan v. Intl All. of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)).

*Familia v. High*, No. CV TDC-21-1139, 2022 WL 899747, at *5, 2022 U.S. Dist. LEXIS 56630, *16 (D. Md. Mar. 28, 2022).

Plaintiff's EEOC charge listed his employer's address as "500 Volvo Parkway PAINTER, VA 23420[.]" [DE 1-2, p. 2]. Attached to the amended complaint are several of Family Dollar's filings with the North Carolina Secretary of State. [DE 21-2]; [DE 21-3]; [DE 21-4]. Family Dollar's principal office was located at 500 Volvo Parkway, Chesapeake, VA 23320, and its annual

report filed July 10, 2025 reveals a change of address to 510 Volvo Parkway, Chesapeake, VA 23320.

"The regulations specifically allow that 'a charge is sufficient when the EEOC receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Agolli v. Office Depot, Inc.*, 548 Fed. Appx. 871, 876 (4th Cir. 2013) (citing 29 C.F.R. § 1601.12(a)(3); § 1601.12(b)) (cleaned up). Plaintiff's charge sufficiently identifies the parties and the basis for filing. The Court declines to dismiss plaintiff's claims based on plaintiff's error in addressing his charge.

The charge does not, however, contain allegations regarding plaintiff's Title VII race discrimination claim. "Title VII gives initial enforcement responsibility to the EEOC. An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005).

> Even after a plaintiff has exhausted his administrative remedies, the administrative framework plays a substantial role in focusing the formal litigation it precedes. If 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'

*Id.* at 509 (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

In his EEOC charge, plaintiff includes allegations related to disability. The charge begins with a designation of "DISCRIMINATION BASED ON: Disability." [DE 1-2, p. 2]. Plaintiff alleged he was "disabled/QID, as defined by Title I of the Americans with Disabilities Act[.]" *Id.* He alleged he engaged in protected activity by requesting reasonable accommodations for his disability. *Id.* The charge concludes: "I believe that I was discriminated against because of my disability, and retaliation for my February 2024 and June 2024 engagement in the protected activity

of requesting reasonable accommodations for my disability, in violation of Title I of the Americans with Disabilities Act of 1990, as Amended." *Id.* at p. 3. Nowhere does his charge contain allegations of discrimination based on plaintiff's race.

"The plaintiff's claim will generally be barred if [the] charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *Laster v. NAI, The Michael Companies*, No. CV TDC-18-3200, 2019 WL 3208060, at *3 (D. Md. July 16, 2019) (alteration in original) (quoting *Chacko*, 429 F.3d at 509). Plaintiff's Title VII claim is barred for failure to exhaust administrative remedies. Furthermore, for the reasons stated below, it is independently subject to dismissal for failure to state a claim.

**II. Defendants' Motions to Dismiss for Failure to State a Claim Under Title VII or the ADA**

"To establish a prima facie retaliation claim under the ADA, plaintiffs must allege (1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011) (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001)). Plaintiff alleges he "engaged in protected activity under the ADA by requesting and utilizing approved medical leave for his disability." [DE 21, ¶ 28]. Requesting a reasonable accommodation is a "protected activity capable of grounding an ADA retaliation claim[.]" *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 n. 3 (4th Cir. 2001).

A plaintiff "is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd* 566 U.S. 30 (2012); *Anderson v. Sch. Bd. of Gloucester Cnty., Virginia*, No. 3:18CV745, 2020 WL 2832475, at *18 (E.D. Va. May 29, 2020) (applying the same standard to ADA retaliation claims). Plaintiff's employment was terminated less than a month after he was approved

for long-term disability leave. [DE 21, ¶¶ 17–18]. His allegations are sufficient to state a claim for ADA retaliation. As the Court allows plaintiff's ADA retaliation claim to proceed, it will allow the ADA discrimination claim to proceed as well.

"The elements of a prima facie case of race discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Wright v. Hertford Cty. Bd. of Educ.*, No. 2:23-CV-30-D, 2024 WL 85926, at *9, 2024 U.S. Dist. LEXIS 3911, *25 (E.D.N.C. Jan. 8, 2024) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). To state a Title VII discrimination claim, a plaintiff must plausibly allege facts that support a reasonable inference that the defendant took adverse employment action because of a protected characteristic. *See, e.g., McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585–87 (4th Cir. 2015). A plaintiff does not need to establish a prima facie case at the motion-to-dismiss stage, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), but she must allege sufficient facts to provide a clear understanding of the nature of the alleged discrimination and to connect the adverse employment action to a protected characteristic. *McCleary-Evans*, 780 F.3d at 585.

Plaintiff alleges he "is a member of a protected class (Black)." [DE 21, ¶ 33]. Apart from plaintiff's allegation that defendant Yousif is "a Caucasian female," *Id.* at ¶ 13, there is no allegation in the complaint regarding any persons outside plaintiff's protected class. The complaint is therefore devoid of allegations that plaintiff endured "different treatment from similarly situated employees outside the protected class." *Wright*, 2024 Dist. LEXIS 3911 at *25. That similarly situated employees outside plaintiff's protected class received more favorable treatment is a "dispositive element of his Title VII" claim. *Futrell v. Blanton's Air, Plumbing & Elec., LLC*, No.

5:23-CV-739, 2024 WL 3852132, at *3 (E.D.N.C. Aug. 16, 2024). The complaint is without sufficient allegations to create a plausible inference that plaintiff's termination was connected to or motivated by his race.

**III. State Law Claims**

In addition to his Title VII and ADA claims, plaintiff asserts claims for wrongful termination in violation of North Carolina public policy, intentional infliction of emotional distress, and breach of implied contract.

Plaintiff identifies N.C. Gen. Stat. § 143-422.2 as the basis of public policy for his wrongful termination claim. The North Carolina Equal Employment Practices Act (NCEEPA) provides, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a). In passing the NCEEPA, the state legislature's purpose was the same as Congress' in enacting Title VII: "the elimination of discriminatory practices in employment." *N. Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 141 (1983). To that end, the North Carolina Supreme Court expressly adopted Title VII's "evidentiary standards and principles of law . . . insofar as they are not in conflict with [North Carolina]'s statutes and case law." *Id.*

As the Court allows plaintiff's ADA claims to proceed, his NCEEPA claim may proceed as well. *See Cook v. United Parcel Serv., Inc.*, No. 520CV00042KDBDSC, 2021 WL 2110883, at *10 n. 8 (W.D.N.C. May 25, 2021), *aff'd*, No. 21-1693, 2022 WL 1090251 (4th Cir. Apr. 12, 2022) (ADA and NCEEPA claims rose and fell together).

In support of his claim for breach of implied contract, plaintiff alleges, "Defendants' established policies and uniform practices created a binding, implied contract that an employee's job would be protected while on approved disability leave and that benefit premiums could be paid retroactively upon return." [DE 21, ¶ 43]. "Under North Carolina law, 'the existence of the relation of employer and employee ... is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts, express or implied.'" *Rumley v. City of Graham*, No. 1:24CV323, 2025 WL 448008, at *6 (M.D.N.C. Feb. 10, 2025) (quoting *Hollowell v. North Carolina Dep't of Conservation and Dev.*, 206 N.C. 206, 208 (1934)).

> [The North Carolina Supreme] Court has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party. *Soles v. City of Raleigh Civil Serv. Comm'n*, 345 N.C. 443, 446, 480 S.E.2d 685, 687 (1997); *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987). There are limited exceptions. First, as stated above, parties can remove the at-will presumption by specifying a definite period of employment contractually. Second, federal and state statutes have created exceptions prohibiting employers from discharging employees based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer. *See, e.g.*, 29 U.S.C. § 623(a) (1988) (Age Discrimination Act); 42 U.S.C. § 2000e–2a (1988) (Equal Employment Opportunities Act); 42 U.S.C. § 12112(a) (Supp.1988) (Americans with Disabilities Act); N.C.G.S. § 95–241 (1993) (prohibiting discharge in retaliation for filing workers' compensation, OSHA, and similar claims). Finally, this Court has recognized a public-policy exception to the employment-at-will rule. *See Amos v. Oakdale Knitting* Co., 331 N.C. 348, 416 S.E.2d 166 (1992) (discharging an employee for refusing to work for less than minimum wage violates public policy); *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989) (discharging an employee for refusing to falsify driver records to show compliance with federal transportation regulations offends public policy).

*Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331–32 (1997). Although plaintiff does not allege the existence of any contract establishing a definite term of employment, the Court has allowed his ADA retaliation and wrongful termination claims to proceed. Accordingly, as those

theories plausibly allege the second and third exceptions to the at-will rule recognized in *Kurtzman*, the Court will allow plaintiff's breach of implied contract claim to proceed.

The amended complaint asserts claims for intentional infliction of emotional distress against not only Family Dollar, but also defendant Yousif. [DE 21, p. 8]. Plaintiff's response to defendants' motions to dismiss concedes that the complaint against defendant Yousif should be dismissed. [DE 44, p. 5]. As the motion to dismiss the claims against Yousif is unopposed, it is granted.

The IIED claim against Family Dollar is also dismissed. The elements of a North Carolina IIED claim are "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." *Turner v. Thomas*, 369 N.C. 419, 427 (2016) (citing *Dickens v. Puryear*, 302 N.C. 437, 452 (1981)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (citing Restatement (Second) of Torts § 46 comment (d) (1965)). The conduct which plaintiff alleges rose to the level of "extreme and outrageous" was "terminating a 70-year-old, long-term employee while he was medically vulnerable and on approved disability leave, using a false pretext, and after the supervising manager expressed a malicious desire to oust him." [DE 21, ¶ 40].

North Carolina courts have rejected claims based on conduct more severe than this. *See Soto v. Town of Rolesville*, 729 F. Supp. 3d 533, 551 (E.D.N.C. 2024) (citing *Hogan*, 79 N.C. App. at 493–94, for the proposition that courts have found "no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw

menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains"); *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) ("insensitive, immature, and even insulting" sexual harassment was not sufficiently extreme and outrageous); *Jackson v. Blue Dolphins Commc'ns of N.C., LLC*, 226 F.Supp.2d 785, 794 (W.D.N.C. 2002) ("North Carolina courts have been particularly hesitant in finding intentional infliction of emotional distress claims actionable within an employment claim"); *Su v. Matto*, No. 7:20-CV-210-BO, 2021 WL 2345349, at *4 (E.D.N.C. June 8, 2021) ("having to choose between one's health and one's employment has not been determined to rise to the level of extreme and outrageous conduct") (citing *Hogan*, 79 N.C. App. at 494).

## CONCLUSION

For the foregoing reasons, defendant Yousif's motion to dismiss [DE 32] is GRANTED. Defendant Family Dollar Stores of North Carolina, LLC's motion to dismiss [DE 29] is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for ADA retaliation, ADA discrimination, wrongful termination in violation of North Carolina public policy, and breach of implied contract may proceed. The Title VII race discrimination and intentional infliction of emotional distress claims are DISMISSED.

SO ORDERED, this 25 day of August, 2026.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE